**Robert BAFFA, Individually and On Behalf of All Others Similarly Situated, Plaintiff,**

v.

**DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION, EOS Partners, L.P., General Electric Capital Corporation, A. Andrew Levison, Steven M. Friedman, Douglas R. Korn, Jules A. Borshadel, and John K. Henry, Defendants.**

**No. 96 Civ. 0583(CBM).**

United States District Court, S.D. New York.

April 22, 1999.

---

Rabin & Peckel, by Jacqueline Sailer, Stephen Rabin, New York City, for Intervenors.

Chadbourne & Parke, by Brian Miller, New York City, for defendant EOS Partners, Levision, et al.

Weil, Gotshal & Manges, by Stephen A. Radin, New York City, for defendant G.E. Capital Corp.

Davis, Polk, Wardwell, by William Wurtz, Kenneth Bernstein, for defendant Donaldson, Lufkin, Jenrette Securities Corp.

## MEMORANDUM OPINION

MOTLEY, District Judge.

In this securities fraud action brought under the Securities Act of 1933 and the Securities Exchange Act of 1934, Brett Baffa and Mary Dorflinger move this court to intervene as class representatives. The intervenors also bring a motion to certify the class under FED.R.CIV.P. 23. For the reasons described below, the court denies the intervenors' application to serve as class representatives. Since the court finds the intervenors to be unsuitable as class representatives, the court need not address the intervenors' motion for class certification.

## I. BACKGROUND

Plaintiff, Robert Baffa ("Baffa"), commenced this action on January 26, 1996 against defendants, Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ"), EOS Partners, L.P. ("EOS"), General Electric Capital Corporation ("GE Capital"), A. Andrew Levison ("Levison"), Steven M. Friedman ("Friedman"), Douglas R. Korn ("Korn"), Jules A. Borshadel ("Borshadel"), and John K. Henry ("Henry"), alleging securities fraud.

This action arises out of the 1994 initial public offering ("Offering") of Units of Rickel Home Centers, Inc. ("Rickel") stock. The Offering was made pursuant to a registration statement and prospectus which was declared effective by the SEC on October 28, 1994. The Offering was consummated on November 4, 1994.

Baffa alleges that on November 9, 1994, five days after the Offering had closed, he purchased 10 Units at a cost of $998.75 per Unit. Baffa alleges that the price of the stock suffered a huge decline soon thereafter. Baffa sold his Units on December 28, 1995 at a price of $350 per Unit.

According to Baffa's complaint,[1] the registration statement contained materially false and misleading facts about Rickel. In addition, the registration statement allegedly omitted several material facts about Rickel. Baffa alleges that all defendants have violated § 15 of the Securities Act of 1933 ("1933 Act"), and § 10(b) and § 20(a) of the Securities Exchange Act of 1934 ("1934 Act"). Baffa also alleges that some of the defendants have violated § 11 of the 1933 Act. Furthermore, Baffa alleges that defendants have engaged in common law fraud in connection with Baffa's purchase of these securities.

Defendants are various individuals and entities associated with the Offering of the Rickel Units. Friedman, Korn, Borshadel, Henry and Levison were all Rickel directors and/or officers at the time of the Offering. Defendant DLJ was the underwriter for the Offering. Defendants EOS and GE Capital each owned 44.2% of Rickel's common stock at the time of the Offering.

On July 10, 1997, the court severed the federal securities law claims from the common law claims. At a pre-trial conference on November 14, 1997, the court sanctioned plaintiff and his counsel under Rule 11 of the Federal Rules of Civil Procedure for "fail[ing] to disclose in October 1996 that there was no evidentiary support for the figures alleged in the original complaint and [for failing] to answer the defendant's interrogatories fully on September 30, 1997." *Nov. 14, 1997 Order.* On February 13, 1998, the parties stipulated that the Rule 11 sanction would be in the amount of $45,000.00. However, as of September 28, 1998, the date of oral argument on the present motions, the $45,000 sanction had not yet been paid. On April 3, 1998, the court denied class certification on the grounds that: "(1) the Rule 11 sanction [ordered on November 14, 1997] renders plaintiff an atypical and inadequate class representative; (2) plaintiff is an atypical and inadequate representative because he is not a member of the class." *April 3, 1998 Order.* The court held that Robert Baffa lacked standing to serve as a class representative because the Rickel Units were purchased for his son, Brett Baffa ("Brett"), and

at the time of the April 3, 1998 conference, Brett was over the age of majority. Brett turned eighteen in December 1997 and had recently taken possession of the Uniform Gifts to Minor Act ("UGMA") account that his father opened on his behalf. Since Brett was over 18 and had taken control of his UGMA account, Robert Baffa no longer had standing to pursue his son's claims of fraud involved in the purchase of the Rickel Units. Plaintiff's counsel was ordered to substitute another class member by May 4, 1998. Mary Dorflinger ("Dorflinger") and Brett Baffa ("Brett") filed an application to intervene as class representatives and a motion for class certification on May 4, 1998.

There are two motions presently before the court. First, Mary Dorflinger and Brett Baffa have moved to intervene in this action as class representatives. Second, the intervenors have moved for the class to be certified in accordance with Rule 23 of the Federal Rules of Civil Procedure. For the reasons stated below, the intervenors' application to intervene as class representatives is denied. Finding no suitable class representative present, the court deems it unnecessary to further consider the intervenors' motion for class certification.

## II. Motion to Intervene as Class Representatives

Brett and Dorflinger move to intervene in this action as class representatives. As support for their application to intervene, both assert that they share claims typical to those of the class and are willing to actively litigate this suit on behalf of all those similarly situated. Defendants oppose the intervenors' application on a variety of grounds, including their adequacy and typicality as class representatives as well as the timeliness of their application to intervene in that capacity. The court will address the adequacy and typicality arguments first and then move to the statute of limitations challenge next.

### A. Requirements of Typicality and Adequacy

■ Under FED.R.CIV.P. 23(a), class representatives must have claims or defenses

---

1. All references are to the amended complaint filed on November 14, 1997.

that are typical to those of the rest of the class. Furthermore, the class representative must fairly and adequately protect the interests of the class. The adequacy requirement applies to both the proposed class representative as well as to their retained counsel. *See Marisol v. Giuliani*, 126 F.3d 372, 378 (2d Cir.1997). In fact, in cases where the competency of the class representative is questioned, the adequacy of counsel takes on added significance. *See In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F.Supp. 326, 340–41 (S.D.N.Y.1996) ("[I]n complex actions named plaintiffs are not required to have expert knowledge of all the details of the case ... and a great deal of reliance on expert counsel is to be expected.") (internal citations and quotations omitted). In order to meet the adequacy requirement, the named plaintiffs must not have interests in conflict with those of the class and the purported class counsel must be "qualified, experienced, and generally able to conduct the litigation." *Marisol*, 126 F.3d at 378 (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992)).

Defendants have not asserted that there are conflicting interests between the intervenors and the class but instead contend that the intervenors are inadequate and atypical and thus unable to serve as class representatives. The court will address each intervenor separately in determining whether he or she meets FED.R.CIV.P. 23(a) requirements.

### 1. Brett Baffa

█ Defendants challenge that Brett is unsuited to be a class representative because he is unknowledgeable about the basic facts underlying this lawsuit. Defendants argue that Brett is merely lending his name to the suit that is being controlled, albeit behind-the-scenes, by his father, Robert Baffa, whom this court has previously held to be an atypical and inadequate class representative.[2] and more plainly, by class counsel. Moreover, defendants argue that Brett's choice of

counsel, who were also previously sanctioned $45,000 by this court, further renders Brett an inadequate class representative.

Brett's lack of knowledge regarding basic facts alleged in this action is made readily apparent from the answers he gave at his deposition on July 13, 1998. *See* Ex. 18 to Hall Aff. Opp. Mot. Intervene at 46–53. Brett did not know basic information about his UGMA account, including the value of the securities in the account, the type of securities in the account, nor what securities his father had purchased or sold in the UGMA account. *See id.* at 50–52. Furthermore, Brett did not participate in any investment decisions on behalf of his account (deferring completely to his father's judgment, even after he took control of the UGMA account), nor has he reviewed any of his account statements to track his investments. *See id.* at 52. It is reasonable to infer that Brett is totally dependent on his father to develop the allegations forming the basis of this action.

Brett has met with his counsel only on two occasions—first, at a meeting set up by his father where he agreed to join the suit as a named plaintiff and second, at his (Brett's) deposition. *See id.* at 27. Brett does not recall having had any telephone conversations with counsel but has signed documents in this action under "the pains and penalties of perjury" without understanding the meaning of the phrase. *See id.* at 23, 79.

Q: Are you aware that you signed this document under the penalties of perjury?

A: I don't understand that ....

Q: Do you understand what the penalty of perjury means?

A: No.

Q: Did you ever ask anybody what the penalty of perjury means?

A: Well, I have an idea of what it is, but I didn't ask at the time. Isn't perjury

**2.** Robert Baffa's declaration supporting Brett's motion to intervene seems to confirm defendants' suspicions about Baffa's intention to remain in a supervisory role in this litigation. Specifically, Baffa states that he will have an accountant, who was retained by Brett's counsel, "report directly

to me ... and keep me informed of all developments in the case, to his knowledge, independently of and in addition to the information provided to me by my attorneys." *Baffa Decl.* ¶¶ 1, 3.

when you sign somebody else's name? No, that is forgery. No, I don't.

*Id.* at 22–23.

Brett's lack of knowledge about the basic allegations in this suit is further highlighted by his inability to identify any of the defendants.

Q: ... I'm asking you who you have sued in this action?

A: I'm not answering this question.

Q: Sir, you have to answer the question if you know the answer.

A: I don't know the answer.

Q: So you do not know who the defendants are in this action?

A: No, I do not.

*Id.* at 30.

Therefore, the court finds that Brett's substantial lack of understanding of the claims in this case as well as his lack of communication with counsel renders him unable to fairly and adequately protect the interests of the class. *See, Beck v. Status Game Corp.*, No. 89 Civ. 2923, 1995 WL 422067, *7 (S.D.N.Y. July 14, 1995) (Edelstein, J.) (finding plaintiffs' lack of familiarity with securities fraud suit rendered them inadequate class representatives); *Darvin v. Int'l Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y.1985) (finding plaintiff's "uncertainty and inconsistency, which are characteristic of plaintiffs deposition testimony and which indicate plaintiffs unfamiliarity with the action, illustrate his inadequacy to act as class representative.") (citations omitted); *Greenspan v. Brassler*, 78 F.R.D. 130, 134 (S.D.N.Y.1978) ("Plaintiffs' limited personal knowledge of the facts underlying this suit, as well as their apparently superfluous role in this litigation to date, indicate their inadequacy as class representatives.") (citations omitted).

The efforts by Brett's counsel to distract the court's attention away from Brett's lack of knowledge and towards their own alleged expertise and competence in complex securities litigation is also unavailing. Brett's counsel allege that Brett is familiar with the basic facts involved in this litigation and has been made aware of the court's previous sanction against them. They further argue

that the court should focus on the adequacy of counsel rather than on Brett's qualifications. *See In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.*, 941 F.Supp. 326, 341 (S.D.N.Y.1996) ("[I]n complex securities fraud cases, this Court is in agreement with 'the recent trend in this district to assess the adequacy of the representative's attorney rather than the personal qualification of the named plaintiff.'") (quoting *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 651 (S.D.N.Y.1986)).

However, even in *In re TCW/DW*, the court found that "all [class] representatives had a basic understanding of their claims." *Id.* at 341. Here, the court finds that Brett lacks a fundamental understanding of the issues involved in this case. Furthermore, Brett has not displayed a willingness to stay abreast of the litigation, as demonstrated by his vague or complete lack of recall of material issues during his deposition. Moreover, Brett's choice of counsel, who have proven themselves unable to properly conduct this litigation as evidenced by this court's previous Rule 11 sanction assessed against them, do not have the confidence of the court that they will fairly and adequately represent the interests of the class. *See Wagner v. Lehman Brothers Kuhn Loeb, Inc.*, 646 F.Supp. 643, 662 (N.D.Ill.1986) ("Reference to counsel's unethical and improper actions is sufficient to find that he cannot adequately represent the putative class in accordance with his fiduciary duties.").

Thus, this court finds Brett to be an inadequate class representative. *See, In re TCW/DW N. Amer. Gov. Income Trust Sec. Litig.*, 941 F.Supp. at 341 (finding plaintiffs with "moderate or limited knowledge" of the case are adequate where "they have shown a willingness to pursue actively the litigation by ... staying abreast of the litigation as it proceeds ... and [where] the Court has high regard for and confidence in ... the lead class counsel.").

### 2. Mary Dorflinger

■ Dorflinger is a sophisticated broker who owns a brokerage firm in Dallas, Texas. She purchased 20 Units of Rickel stock at $722.25 per Unit for her individual retire-

ment account ("IRA") on August 9, 1995. She made another purchase of Rickel Units at $410.50 per Unit in May 1996, after Rickel had declared bankruptcy in January 1996. Dorflinger also seeks to intervene as a class representative.

Defendants challenge that Dorflinger's claims are atypical from those alleged in the amended complaint. They allege that Dorflinger is subject to unique defenses not common to the rest of the class. Defendants claim that Dorflinger is atypical and inadequate because she is a "speculative trader" who buys investments at distressed prices and does not rely on the integrity of the market.[3] Defendants also claim that the prior Rule 11 sanctions against Dorflinger's counsel render her inadequate to represent the class. The intervenors rebut defendants' arguments by asserting that Dorflinger's investment strategy is irrelevant and that her claims of fraud are typical to those of the class. The intervenors further contend that Dorflinger substantially relied on the market and is a typical and adequate representative.

The court finds that Dorflinger's purchase of Rickel Units in August 1995 and again in May 1996 (after Rickel had filed for bankruptcy) renders Dorflinger's claims atypical. Dorflinger's August 1995 purchase was made after the value of the Rickel stock had declined drastically with the trade press reporting that Rickel was in financial trouble. By this time, Rickel's quarterly financial statements disclosed Rickel's drastic drop in gross earnings. At the very least, it is clear that the circumstances surrounding Dorflinger's August 1995 purchase were markedly different than that which confronted class members who purchased Rickel Units in November 1994.[4] Dorflinger had access to more information about Rickel's financial condition than those who purchased in November 1994. This additional information may have affected her knowledge about the alleged omissions in the Prospectus. Furthermore, Dorflinger's May 1996 purchase was made after Rickel had announced its intentions to default on its obligations (December 1995) and had filed for bankruptcy (January 1996). Thus, Dorflinger's claims are not typical to those of the class. *See Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 652 (S.D.N.Y. 1986) (holding that Rule 23(a) typicality requirement satisfied "only if the named plaintiff and the proposed class members suffered the same injury under similar circumstances").

The court also finds Dorflinger's choice of counsel renders her inadequate to serve as class representative. As articulated above, the prior Rule 11 sanctions assessed against Dorflinger's counsel demonstrates that Dorflinger cannot adequately or fairly represent the class. Thus, the court finds Dorflinger an atypical and inadequate class representative.

## B. Statute of Limitations Challenge

Defendants alternatively argue that the intervenors' application to intervene as class representatives was untimely. The intervenors respond that the limitations period was tolled under the *American Pipe* doctrine as delineated by the Supreme Court in 1974. In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Supreme Court held that "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class

---

**3.** Dorflinger's investment strategy as a speculative trader is irrelevant for the purposes of deciding this motion. It is only relevant to assess whether Dorflinger's claim that she was defrauded by defendants' alleged material misrepresentations and omissions are sufficiently similar to the claims alleged in the amended complaint.

**4.** Defendants argue that Rickel made a full public disclosure of its financial condition in its April 1995 10–K financial statement. However, the court declines to address whether Rickel made a full disclosure in April 1995. Fed.R.Civ.P. 23

does not grant the court the authority to inquire into the merits of a suit when determining whether it may be maintained as a class action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). It is enough to infer that the financial situation facing Dorflinger at the time of her purchases of Rickel Units varied significantly from those who purchased Rickel Units in November 1994. Thus, the court finds that Dorflinger's claims are atypical from those of other class members.

**178**

action status." However, the Supreme Court limited its *American Pipe* holding to only those actions where class status was denied for failing to meet the numerosity requirement under FED.R.CIV.P. 23(a). In *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court elaborated on its *American Pipe* holding, ruling that the filing of a class action tolls the statute of limitations as to all asserted members of a class who seek to intervene *as individuals* following the denial of class certification. Following *Crown, Cork,* the Second Circuit has limited the tolling doctrine so as to prevent the filing of a subsequent class action nearly identical in scope to the original class action that was denied certification by putative class members. *See Korwek v. Hunt,* 827 F.2d 874, 876–77 (2d Cir.1987). The rationale behind the *Korwek* holding is to prevent the endless "piggy-backing" of class actions; to stop purported class members from bringing subsequent class actions in efforts to evade the court's prior denial of class status, which effectively tolls the limitations period indefinitely. *See id.* at 878.

Litigation brought under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder "must be commenced within one year from the date of discovery of the facts constituting the violation and within three years after such violation." *Lampf v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). In the present case, the violation took place on November 4, 1994, the date of the initial public offering. The intervenors were put on notice of the violation no later than February 6, 1996 when plaintiff's counsel published notice of this litigation in accordance with the requirements of the Private Securities Litigation Reform Act of 1995. The intervenors' motion to intervene was filed on May 4, 1998, more than three years after November 4, 1994 and more than one year after February 6, 1996.

However, it is unnecessary for the court to address the defendants' statute of limitation argument since the court has found the intervenors to be inadequate and atypical class representatives. It should, however, be noted that any future motions to intervene as class representatives in this action, or any subsequently filed action involving the same claims against the same defendants, will be considered time-barred. There will be no tolling provision for this type of intervention by additional parties. *See Korwek,* 827 F.2d at 878.

### III. Motion for Class Certification

FED.R.CIV.P. 23 provides that lawsuits may be brought on a class basis if they meet the following requirements:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. FED.R.CIV.P. 23(a).

Furthermore, a class action may be maintained only if the claims common to the class predominate over the individual claims and handling the lawsuit on a class basis is a superior approach than requiring the parties to sue individually. FED.R.CIV.P. 23(b).

Since the court has found the intervenors to be inadequate and atypical, the court finds no need to further address their motion for class certification.

### IV. Conclusion

For the foregoing reasons, the court denies Brett Baffa's and Mary Dorflinger's application to intervene as class representatives. However, Brett Baffa and Mary Dorflinger may intervene in this action as individuals, if they so choose. Furthermore, since the court has found the intervenors to be inadequate and atypical class representatives, the motion to certify the class is also denied.