222 F.3d 52 (2nd Cir. 2000)
 ROBERT BAFFA, On Behalf of Himself and All Others Similarly Situated, Plaintiff-Appellant,
MARY J. DORFLINGER, Individually and On Behalf of All Others Similarly Situated, and BRETT BAFFA, Individually and On Behalf of All Others Similarly Situated, Plaintiffs-Intervenors-Appellants,
v.
DONALDSON, LUFKIN & JENRETTE SECURITIES CORPORATION, EOS PARTNERS, L.P., GENERAL ELECTRIC CAPITAL CORP., ANDREW A. LEVISON, STEVEN M. FRIEDMAN, DOUGLAS R. KORN, JULES A. BORSHADEL, and JOHN K. HENRY, Defendants-Appellees.
 Docket No. 99-7607
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: January 31, 2000
Decided: August 25, 2000
 
 Appeal from order of the United States District Court for the Southern District of New York (Motley, J.) dismissing plaintiffs' securities fraud claims arising out of allegedly false and misleading statements made in registration statement and prospectus. Appellants claim that the district court erroneously: 1) imposed sanctions under Rule 11 of the Federal Rules of Civil Procedure; 2) denied the motion of Robert Baffa for class certification and the motion of Mary Dorflinger and Brett Baffa to intervene as class representatives and for class certification; and 3) dismissed the action.
 Affirmed in part, reversed in part, vacated and remanded in part. [Copyrighted Material Omitted]
 I. STEPHEN RABIN, Rabin & Peckel, LLP (JACQUELINE SAILER, on the brief), New York, N.Y., for Appellants.
 STEPHEN A. RADIN, Weil, Gotshal & Manges, LLP (THOMAS J. HALL, BRIAN A. MILLER, Chadbourne & Parker LLP; WILLIAM E. WURTZ, BENJAMIN S. KAMINETZKY, Davis Polk & Wardwell; Andrew Liebhafsky, Weil, Gotshal & Manges LLP, of counsel), New York, N.Y., for Defendants-Appellees.
 Before: CABRANES, and POOLER, Circuit Judges and CARMAN, Judge.*
 POOLER, Circuit Judge:
 
 
 1
 Robert Baffa ("Baffa"), Brett Baffa ("Brett"), and Mary J. Dorflinger ("Dorflinger") appeal from orders of the United States District Court for the Southern District of New York (Constance Baker Motley, Judge) imposing sanctions on Baffa; denying Baffa's motion for class certification; and denying Brett's and Dorflinger's motion to intervene as class representatives. Appellants also appeal from the order of the district court dismissing the action for Brett's and Dorflinger's failure to comply with the sanctions order and failure to proceed with their individual claims.[1] We conclude that the imposition of sanctions was procedurally defective and that the district court erroneously denied Brett's motion to intervene as class representative. We vacate the order imposing sanctions and vacate the order denying Brett's motion for intervention as class representative; affirm the orders denying Baffa's motion for class certification; and affirm as well the denial of Dorflinger's motion to intervene as class representative. Finally, we vacate the judgment of dismissal and remand for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 2
 This securities fraud action stems from allegedly false and misleading information contained in a registration statement and prospectus of Rickel Home Centers ("Rickel"). The Securities and Exchange Commission declared the Rickel prospectus effective on October 28, 1994, for an initial public offering ("IPO") of shares of stock. On November 9, 1994, Baffa purchased shares of Rickel stock for his then minor son Brett and placed them in a Uniform Gifts to Minors Act ("UGMA") account designated Robert Baffa, C/F/A, Brett Baffa, UGMA/NY. Soon after, the price of Rickel stock declined drastically, and Baffa sold the shares at a loss.
 
 
 3
 On January 26, 1996 Robert Baffa commenced this action against Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ"), EOS Partners, L.P. ("EOS"), and General Electric Capital Corporation ("GE Capital"), as well as several officers and directors of Rickel (collectively "defendants"). At the time of the IPO, EOS and GE Capital each controlled 44.2% of Rickel common stock and DLJ controlled 7.3% of shares. The complaint alleged principally that defendants violated Sections 11 and 15 of the Securities Exchange Act of 1933, 15 U.S.C. §§ 77k, 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t, as well as Rule 10b-5, 17 C.F.R. § 240.10b-5, by providing false and misleading financial information in the Rickel prospectus and registration papers. Baffa claimed that defendants failed to disclose in the prospectus four financial indicators - -net sales, gross profit, EBIDTA (the sum of earnings before income tax [operating income] depreciation, and amortization), and operating income (loss) after debt expense - - which reflected a decline in Rickel's business during the third quarter of 1994 and that left it "in an extremely precarious financial condition at the time of the Offering." According to Baffa, Rickel's poor third quarter financial showing could be deduced by reference to Rickel's annual 10-K Report which had been filed with the SEC on April 29, 1995. Baffa claimed that he and other members of the class who acquired Rickel stock suffered financial loss as a result of the defendants' material untruths and omissions in the registration statement.
 
 
 4
 In support of a motion to dismiss dated October 19, 1996,[2] defendants contended that the figures Baffa used to support his allegation that defendants concealed Rickel's disastrous third quarter performance did not appear in Rickel's 1995 10-K and could not be deduced from it. Defendants DLJ and Levison set forth figures they claimed correctly represented Rickel's net sales, gross profits, net loss, and EBIDTA in an appendix to their memorandum of law. Defendants also served interrogatories requesting the sources for the figures Baffa used to show Rickel's lack of profitability. On August 26, 1997, Baffa refused to answer the interrogatories. The district court ordered Baffa to respond on September 18, 1997. In responses dated September 30, 1997, Baffa admitted that the figures set forth in the complaint should be modified, set forth the proposed modifications and indicated that the numbers were derived from Rickel's 1995 10K and 10Q forms. Baffa continued to refuse to respond to an interrogatory requesting the identity of all persons who participated in calculating its figures. Defendants consequently moved to dismiss pursuant to Rules 12(b)(6) and 37(b)(2)(C) of the Federal Rules of Civil Procedure. On October 31, 1997, Baffa's counsel finally conceded that he had "no calculations or notes" to support his original figures and was not able to "reconstruct" the calculations of the partner who drafted the complaint and had since left the law firm. That same day, Baffa moved to amend his complaint to state the allegedly more accurate figures.
 
 
 5
 On November 14, 1997, the district court rejected defendants' Rule 12(b)(6) and Rule 37(b)(2)(c) motion to dismiss, finding that remedy "might be too harsh." However, Judge Motley stated:
 
 
 6
 [I]t is the court's view that the plaintiff should be required to pay by way of a sanction the defendants' attorneys' fees with respect to this matter of trying to get the correct information as to the figures relied on; in other words, discovery failure sanction, and the sanction which appears to remedy the intentional withholding of the proper information.
 
 
 7
 The court instructed defendants to calculate fees related to "failure to disclose the inaccuracy of the original numbers. . . and failure to fully answer the interrogatories on September 30th " 1997. Judge Motley also permitted plaintiff to amend the complaint to reflect revised financial figures. Defendants moved to dismiss the amended complaint on December 9, 1997, and the district court denied that motion on January 20, 1998. By means of a letter dated February 13, 1998, the parties informed the district court that they had agreed that Baffa would pay $45,000 in fees to defendants to compensate them for costs incurred in responding to the original complaint and moving to compel plaintiffs to answer the interrogatories.
 
 
 8
 On April 3, 1998, the district court denied Baffa's motion for class certification, which he initially made December 15, 1997, on grounds that "1) The Rule 11 sanction renders plaintiff an atypical and inadequate class representative; [and] 2) Plaintiff is an atypical and inadequate representative because he is not a member of the class." Defendants had argued that Baffa lacked standing because he placed the shares in a UGMA account for Brett who, because he is now an adult, controls the shares and incurred the loss. The court ordered plaintiff to substitute another plaintiff by May 4, 1998.
 
 
 9
 Mary Dorflinger and Brett Baffa moved to intervene as class representatives on May 4, 1998. Dorflinger, the owner of a securities brokerage firm in Dallas, Texas, bought shares of Rickel stock in August, 1995 as well as later in 1996. On December 7, 1998, the district court orally denied Dorflinger's and Brett's motion and informed counsel that she would issue a written opinion at a later date. Because the court denied their motion to intervene as class representatives, the court found it unnecessary to reach the issue of class certification. The court ordered Dorflinger and Brett to advise within fourteen days whether they would pursue the action as individuals. In compliance with that deadline, counsel responded by letter dated December 21, 1998, that Dorflinger and Brett Baffa "intend to pursue [the claim] on an individual basis."
 
 
 10
 At a pre-trial conference on April 22, 1999, the district court issued its written opinion denying Dorflinger's and Brett Baffa's motions for intervention as class representatives. See Baffa v. Donaldson, 185 F.R.D. 172 (S.D.N.Y. 1999). When counsel for plaintiffs requested time to consider the opinion before proceeding with the conference, the court sua sponte dismissed the action. Judge Motley cited the "failure of plaintiffs and plaintiffs' counsel to proceed with this action after this court's order of 12/7/98 and for failure of plaintiffs' counsel to pay the $45,000 agreed to by the parties in lieu of a court imposed sanction." This appeal followed.
 
 DISCUSSION
 I. Sanctions
 A. Rule 11
 
 11
 "This court reviews for abuse of discretion a district court's award of sanctions under its inherent powers and under Fed. R. Civ. P. 11." Ametex Fabrics, Inc. v. Just In Materials, Inc., 140 F.3d 101, 108-09 (2d Cir. 1998). We have recognized that "this deferential standard gives recognition to the premise that the district court is better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999) (internal quotation marks omitted). However, we also appreciate that "[a] troublesome aspect of a trial court's power to impose sanctions . . . is that the trial court may act as accuser, fact finder and sentencing judge, not subject to restrictions of any procedural code and at times not limited by any rule of law governing the severity of sanctions that may be imposed." Id. at 334 (quoting Mackler Prods., Inc. v. Cohen, 146 F.3d 126, 128 (2d Cir. 1998). Accordingly, "although the decision to impose sanctions is uniquely within the province of a district court, we nevertheless need to ensure that any such decision is made with restraint and discretion." Schlaifer Nance, 194 F.3d at 334. For the reasons set forth below, we conclude that the district court erroneously awarded attorneys' fees and lacked authority to impose Rule 11 sanctions of any sort for an asserted discovery failure.
 
 
 12
 Pursuant to Fed. R. Civ. P. 11(c), a court may impose sanctions either by motion or on its own initiative. In this case, defendants did not move for sanctions in accordance with Fed. R. Civ. P. 11(c)(1)(A). Rule 11(c)(1)(B) provides that "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate [Rule 11(b)] and directing an attorney, law firm, or party to show cause why it has not violated" the rule. Fed. R. Civ. P. 11(c)(1)(B); see L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 89 (2d Cir. 1998). This rule embodies the due process principle that "a party is entitled to notice of the provision under which sanctions are sought, in order that he be forewarned as to the standard under which his conduct is to be evaluated." L.B. Foster, 138 F.3d at 89; see also Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d 87, 92 (2d Cir. 1999) (per curiam).
 
 
 13
 The district court did not enter an order to show cause and thus denied Baffa notice and opportunity to respond. See Nuwesra 174 F.3d at 92. Moreover, absent a specific motion for attorneys' fees, the court only had authority to order sanctions payable to the court. Under Rule 11(c)(2), the court may order payment of attorneys' fees only "if imposed on motion and warranted for effective deterrence." The district court also cannot order sanctions for violation of Rule 11(b)(2) against a represented party. See Fed. R. Civ. P. 11(c)(2)(A). We therefore conclude that it was not within the court's discretion to order attorneys' fees.
 
 
 14
 We also vacate the award of attorneys' fees under Rule 11 to the extent it was based on plaintiff's "failure to answer the defendants' interrogatories fully." Subsection (d) excludes from the purview of Rule 11 sanctions, discovery responses and motions that are subject to the provisions of Rules 26 through 37 of the Federal Rules of Civil Procedure. If, on remand, the district court determines to revisit the issue of Rule 11 sanctions, it must adhere to the procedural rules which safeguard due process rights and delineate the legal basis for any sanctions awarded.
 
 B. Rule 37
 
 15
 Defendants argue that the sanctions order should be affirmed because they moved for dismissal of the action pursuant to Rule 37(b)(2). While the award of attorney's fees may have been a lesser sanction for failure to answer the interrogatory, we are not persuaded that the award of attorney's fees can be upheld on that basis. It is not clear from the record what portion of the award the district court intended for discovery failure and what part it intended for intentional withholding of information; nor does the order indicate whether it was made under Rule 11 or Rule 37. As we noted in Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997), "it is imperative that the court explain its sanctions order with care, specificity, and attention to the sources of its power. . . . [A sanction award imposed] either without reference to any statute, rule, decision, or other authority, or with reference only to a source that is inapplicable will rarely be upheld." (internal citations and quotation marks omitted).
 
 II. Class Certification
 A. Standards
 
 16
 We turn now to consider whether the court properly denied class certification in this case. "Provided that the district court has applied the proper legal standards in deciding whether to certify a class, its decision may only be overturned if it constitutes an abuse of discretion. However, we are noticeably less deferential to the district court when that court has denied class status than when it has certified a class." Caridad v. Metro-North Commuter R.R., 191 F.3d 283, 291 (2d Cir. 1999) (citations and quotations omitted), cert. denied, 120 S. Ct. 1959 (2000). Pursuant to Fed. R. Civ. P. 23, the party seeking certification must demonstrate numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). While the "district court must be persuaded after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied, . . . a motion for class certification is not an occasion for examination of the merits of the case." Caridad, 191 F.3d at 291 (citations and internal quotations marks omitted). "Nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." Id. (citation, quotation mark and indicator of alteration from original omitted). With this standard in mind, we consider the district court's denial of Baffa's motion for class certification as well as the motion of Dorflinger and Brett to intervene as class representatives. As a preliminary matter, we will not rely on the district court's findings of inadequacy and atypicality to the extent they were based on the sanctions order that we have vacated.
 
 B. Robert Baffa
 
 17
 In addition to finding that the imposition of Rule 11 sanctions rendered Baffa an atypical plaintiff and inadequate class representative, the district court denied certification because Baffa was no longer a member of the class and lacked standing to pursue the claim. Appellants argue that Baffa has standing to pursue this case because he has the power to continue to prosecute the action on behalf of his son, notwithstanding the fact that the account is now in Brett's name. Appellants analogize this situation to a trust, where the trustee has power to continue litigation of a claim begun while the trust was still within his control. Appellants argue that Baffa, as custodian of the account, possessed legal title to the securities and was responsible for "winding up" the affairs of the UGMA account, even after Brett reached the age of majority. Appellees respond that even if this argument were properly preserved below, it nevertheless fails, because in a UGMA account, unlike a trust, the minor obtains indefeasibly vested legal title to the securities by statute. Moreover, appellees argue that even if Baffa had authority to commence the lawsuit, he should have done so in his capacity as custodian on behalf of the account. Instead, Baffa brought the action on behalf of himself and all others similarly situated. In any event, appellees maintain that Baffa lacks standing to pursue legal claims related to the securities since Brett has already reached age 18.
 
 
 18
 We conclude that the district court properly found Baffa lacked standing because he was not a member of the class. We reject appellant's contention that Baffa could continue the action as part of his "winding up" responsibilities. Under New York law, "[t]he structure of the UGMA is superficially analogous to a trust, with the custodian in the role of trustee. However, the minor obtains indefeasibly vested legal title to the property which is gifted in the manner prescribed by statute. . . . [T]he donor retains no rights, legal or equitable, to the conveyed property." Gordon v. Gordon, 70 A.D.2d 86, 90 (2d Dep't 1979), aff'd, 52 N.Y.2d 773 (1980). Furthermore, New York Estates Powers and Trusts Law § 7-4.4(d) provides that "[t]o the extent that the custodial property is not [otherwise] expended, the custodian shall deliver or pay it over to the minor on his attaining the age of eighteen years . . ." N.Y. Est. Powers & Trusts Law § 7-4.4(d) (repealed 1997).[3] Therefore, upon attaining eighteen years of age, Brett received indefeasibly vested title to the property, and his father retained no interest in the account. We find no basis in New York law for concluding that the custodian retains any power to continue administration of the account beyond the time the owner reaches the age of majority. Accordingly, we affirm the district court's denial of Baffa's motion for certification because he is not a member of the class.
 
 C. Mary Dorflinger
 
 19
 The district court denied Mary Dorflinger's motion to intervene as class representative on grounds that her claims were atypical and she was not an adequate representative. See Baffa, 185 F.R.D. at 177. The court found that Dorflinger was a sophisticated broker who had access to more information than other investors in the putative class. See id. In addition she bought Rickel stock after the value had drastically declined amidst reports of financial difficulty. See id. Appellants argue that the court erred in using the timing, circumstances, and investment strategy associated with Dorflinger's purchase of Rickel stock to label her an atypical plaintiff. On the contrary, appellants maintain that Dorflinger's claims are typical because like the other purchasers of Rickel stock, she relied on the integrity of the market and the accuracy of Rickel's financial disclosures in making investment decisions.
 
 
 20
 We conclude that the district court did not abuse its discretion when it denied Dorflinger's motion to intervene as class representative. "While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990) (internal citation omitted). The district court's rejection of Dorflinger is proper in light of the "danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her]." Id. While perhaps no one facet of Dorflinger's claim renders it atypical, her status as a professional broker and the defenses to which she is subject convince us that it was within the district court's discretion to reject Mary Dorflinger as a class representative. Accordingly, we affirm the district court's decision as to Dorflinger.
 
 D. Brett Baffa
 
 21
 The district court rejected Brett's motion to intervene as class representative based on inadequacy of his counsel, his lack of knowledge of the claims and failure to frequently communicate with his lawyer about the lawsuit. See Baffa, 185 F.R.D. at 175. Although our review of the denial of Brett's motion for intervention is narrow, we need not afford the district court the same degree of deference when, as here, it has denied class status through erroneous application of the law.[4] See Marisol A. v. Giuliani, 126 F.3d 372, 375 (2d Cir. 1997) (failure to adhere to proper legal standards is abuse of discretion).
 
 
 22
 In analyzing Brett's intervention motion, the district court focused on defendants' contention that Brett could not be an adequate class representative. The district court considered the adequacy of the class representative under Rule 23(a)(4), noting that the requirement "applies to both the proposed class representative as well as to their retained counsel." Baffa, 185 F.R.D. at 175, citing Marisol, 126 F.3d at 378. The court then went on to emphasize that "in cases where the competency of the class representative is questioned, the adequacy of counsel takes on added significance." Baffa, 185 F.R.D. at 175, citing In re TCW/DW N. Am. Gov't Income Trust Sec. Litig., 941 F. Supp. 326, 340-41 (S.D.N.Y. 1996). To meet the adequacy requirement, the court stated, "named plaintiffs must not have interests in conflict with those of the class" and must have qualified counsel. Baffa, 185 F.R.D. at175, citing Marisol, 126 F.3d at 378. Noting that there was no conflict of interest allegation, and having determined that counsel was inadequate due to the sanctions previously imposed, the district court then turned to address defendant's challenge to Brett's intervention based on his lack of knowledge of the case.
 
 
 23
 Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). Defendants did not suggest that Brett's interests were antagonistic to the interest of the other class members. Moreover, as we have already stated, because we have vacated the sanctions order, inadequacy of counsel was not a proper basis for denying Brett's motion. However, because the adequacy of representation by counsel is so intertwined with the question of adequacy of the class representative, we find more compelling the need to examine the district court's rationale for denying Brett's motion. Appellants challenge the district court's denial of Brett's motion on grounds that he lacked adequate knowledge of the case. Appellants argue that Brett has sufficient knowledge of the case, wishes to pursue the claims, and is not merely lending his name to the lawsuit. Because we are concerned whether the district court applied the proper legal standard, we consider the "knowledge" rules in greater detail.
 
 
 24
 The district court cited In re TCW/DW for the proposition that "where the competency of the class representative is questioned, the adequacy of counsel takes on added significance." Baffa, 185 F.R.D. at 175. The court further invoked In re TCW/DW for the rule that in complex securities litigation, named plaintiffs are not expected to possess expert knowledge of the details of the case and must be expected to rely on expert counsel. See id. Nevertheless, the district court concluded that Brett's lack of knowledge regarding basic facts of the case rendered him inadequate.
 
 
 25
 However, we note that in reaching this conclusion, the district court failed to consider In re TCW/DW's further observation that "the motivation behind requiring representative plaintiffs to demonstrate great familiarity with the case is a fear that the representatives, during pretrial discovery and at trial, will give misleading and contradictory testimony with regard to basic issues in the case that might make their claims subject to unique defenses." In re TCW/DW, 941 F. Supp. at 340, citing County of Suffolk v. Long Island Lighting Co. ("LILCO"), 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989), aff'd., 907 F.2d 1295 (1990). "[I]n that situation, the challenge to class certification can alternatively be viewed as a challenge to the representative plaintiffs' compliance with the typicality requirement of Rule 23(a)(3)." In re TCW/DW, 941 F. Supp. at 340.[5] Instead of applying the "knowledge" requirement with a view toward typicality concerns, however, the district court unfortunately seized on a myopic view of the knowledge requirement and concluded that Brett did not have a basic understanding of the litigation and therefore could not be an adequate class representative.
 
 
 26
 We are not convinced that such a harsh application of the rules is appropriate, especially in the circumstances of this case. The Supreme Court in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 370-374 (1966) expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance. To the extent that Brett relies on his father and lawyer for advice, appellants argue that should not disqualify him as class representative. We agree, especially since the district court's findings regarding the plaintiff's counsel were based on the sanctions order which we vacated. Under Rule 23(a)(4), a class representative must "fairly and adequately protect the interests of the class." Thus, class representative status may properly be denied "where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1077-78 (2d Cir. 1995).
 
 
 27
 We disagree with the district court's conclusion that the answers Brett gave at his deposition should prohibit him from intervening, inasmuch as there is no showing that he is unwilling or unable to pursue the litigation on behalf of the class. Although Brett was only eighteen, and had only recently completed the process of taking over the UGMA account, he understood the nature of his proposed role in the litigation and demonstrated his willingness to carry it forward. When he was shown his signature on the certificate, he was able to explain that it indicated his willingness to accept the responsibility to "represent a class during the court for Rickel's, the bonds. I would be a representative, a plaintiff of a class." Moreover, Brett should not be penalized for having met with his attorneys only a couple of times. Indeed, the district court seems to have overlooked the substance of these meetings and concentrated more on how many times Brett saw his attorneys, rather than what was accomplished during their meetings. During those meetings, Brett reviewed and signed the amended complaint. In addition, he reviewed the financial information therein which was central to the fraud allegations he would be asserting on behalf of the class. Brett also participated in meetings with the accounting expert who reviewed the financial data. Thus, the record in this case does not support the district court's conclusion that "Brett has not displayed a willingness to stay abreast of the litigation, as demonstrated by his vague or complete lack of recall of material issues during his deposition." Baffa, 185 F.R.D. at 176.
 
 
 28
 Also relevant to the question of Brett's adequacy as class representative is whether he has the knowledge to be able to protect the interests of the class. The record shows that he understood that the Rickel investments were the subject of this litigation; he understood that he and others had sustained a loss due to the alleged fraud; and he understood that he could continue to rely on the expert for advice in accounting matters. The acknowledgment of advice and support from both his father and his attorneys cannot support a conclusion that Brett is unable to pursue the litigation on behalf of the class. Far from showing Brett's ignorance of the litigation or his inability to serve as class representative, it demonstrates Brett's ability to appreciate the limits of his knowledge and rely on those with the relevant expertise. Finally, the record reflects that Brett understood the Rule 11 sanctions, another basis for the district court's decision.
 
 
 29
 In sum, we conclude that the district court misapplied the adequacy rules to block Brett's intervention as class representative. Accordingly, we vacate the order of the district court denying Brett Baffa's motion to intervene and remand for further consideration of that question in a manner consistent with this opinion.
 
 III. Dismissal
 
 30
 At a pre-trial conference on April 22, 1999, the district court sua sponte ordered that the action be dismissed based on the "failure of plaintiff and plaintiff's counsel to proceed with this action after this court's order of 12/7/98, and . . . failure of plaintiffs' counsel to pay the $45,000 agreed to by the parties in lieu of a court-imposed sanction."[6] In light of our reversal of the sanctions order, it is apparent that Judge Motley should not have dismissed the action based on non-payment of attorney's fees. Therefore, we discuss the dismissal only insofar as it was predicated on failure to prosecute and failure to comply with an order of the court.
 
 
 31
 We review for abuse of discretion both dismissal for failure to prosecute and dismissal pursuant to Fed. R. Civ. P. 41(b) for failure to comply with an order of the court. See Nita v. Connecticut Dep't of Envtl. Protection, 16 F.3d 482, 485 (2d Cir. 1994) (dismissal for failure to prosecute); Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996). Moreover, because the factors involved in determining whether there has been an abuse of discretion in either context are nearly identical, we analyze them together. We examine principally 1) the duration of plaintiff's failures or non-compliance; 2) whether plaintiff had notice that such conduct would result in dismissal; 3) whether prejudice to the defendant is likely to result; 4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and 5) whether the court adequately considered the efficacy of a sanction less draconian than dismissal. See Nita, 16 F.3d at 485; Lucas at 535. "While we do not now require the court to discuss the factors on the record," we have noted that "a decision to dismiss stands a better chance on appeal if the appellate court has the benefit of the district court's reasoning." Lucas, 84 F.3d at 535.
 
 
 32
 In this case, the district court did not discuss the relevant factors in the analysis before ordering dismissal. Our review of the relevant factors indicates that dismissal was an abuse of discretion. Dorflinger and Brett did not have notice that failure to do more than they did would result in dismissal. By all measures, Brett and Dorflinger complied with the district court's December 7, 1998, order to inform the court whether they wished to proceed with their individual claims. They timely informed the court of their intent to pursue individual claims by letter dated December 21, 1998. While we recognize that Brett and Dorflinger could have filed individual complaints in the interim, we find that it was not unreasonable for the parties to proceed no further when they did not have the benefit of Judge Motley's written decision outlining the rationale for denying them class representative status. In addition, the record reflects no prejudice to the defendants in the circumstances presented. In light of the scant explanation for the dismissal, we conclude that the court did not "take[ ] care to strike the balance between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard." Nita, 16 F.3d at 485 (internal quotation mark omitted). In fact, Dorflinger and Brett had no opportunity to be heard. When they attempted to explain their position to the court, the court abruptly dismissed the action. Finally, the court made no effort at the April 22, 1999 conference to ascertain whether a remedy short of dismissal would ameliorate the situation. Accordingly, we vacate the judgment of dismissal as unduly harsh and remand for further proceedings consistent with this opinion.
 
 CONCLUSION
 
 33
 For the foregoing reasons, we affirm the district court's denial of Baffa's motion for class certification and Dorflinger's motion to intervene as class representative. We also vacate the sanctions award, vacate the denial of Brett's motion to intervene as class representative, vacate the judgment of dismissal and remand for proceedings consistent with this proceeding.
 
 
 
 Notes:
 
 
 *
 The Honorable Gregory W. Carman, Chief Judge of the United States Court of International Trade, sitting by designation.
 
 
 [1]
 Although judgement never entered, we nevertheless have jurisdiction to consider this appeal because the order of dismissal effectively terminated the litigation. See Songbyrd v. Estate of Albert B. Grossman, 206 F.3d 172, 177 (2d Cir. 2000) (party may appeal from a dispositive order without awaiting entry of judgment).
 
 
 [2]
 Although the papers were dated October 19, 1996, the docket sheet indicates that motions to dismiss (presumably but not certainly the same motions) were filed February 21, 1997. The district court denied the motion to dismiss.
 
 
 [3]
 In 1996 the New York State Legislature enacted the Uniform Transfers to Minors Act, N.Y. Est. Powers & Trusts Law § 7-6 et seq., and thereafter repealed the UGMA. The UGMA, however, continues to govern the validity of transfers made before December 31, 1996. See Est. Powers & Trusts Law § 7-6.22.
 
 
 [4]
 Moreover, in considering the district court's decision, we are mindful of the context in which it arose. This was not a situation in which the court ruled shortly after argument on the motion and provided an opinion detailing its decision. Nor did the court give Brett an opportunity to respond to the conclusion that his lack of knowledge rendered him an inadequate representative before the court dismissed the case. Instead, nearly three months after argument on the intervention and certification motion, on December 7, 1998, the district court issued a terse order denying Brett's and Dorflinger's motion and ordering them to inform the court within fourteen days whether they wished to pursue their individual claims. It was not until April 22, 1999 that the district court issued its written decision. When plaintiffs requested time to consider the decision, the court dismissed the action. While we address the dismissal below, we note for purposes of Brett's intervention motion that he was without recourse to challenge the court's conclusion or conform to its expectations, and ultimately suffered dismissal of his case.
 
 
 [5]
 When viewed more carefully and with a fuller appreciation of the motivation behind them, the "knowledge" rules the district court sought to apply relate to the typicality concerns of Rule 23. However, the district court did not explicitly discuss typicality in conjunction with Brett's motion and made no findings as to how his lack of knowledge of the basic issues of the case might make his claims subject to unique defenses and undermine his ability to represent the class. See Kline v. Wolf, 702 F.2d 400, 403 (2d Cir. 1983).
 
 
 [6]
 The district court ordered plaintiff, not his counsel, to pay attorney's fees.