Andrew J. RODOLICO, on behalf of himself and all others similarly situated, Howard K. Benjamin, on behalf of himself and all others similarly situated, Robert G. Bozzone on behalf of himself and all others similarly situated, Marvin Stall, on behalf of himself and all others similarly situated Melvyn Rubenstein, on behalf of himself and all others similarly situated, Robert E. Wechsler, on behalf of himself and all others similarly situated, Plaintiffs,

v.

UNISYS CORPORATION, Defendant.

No. CV953653ADSWDW.

United States District Court, E.D. New York.

March 30, 2001.

---

**3.** At this time, the Court finds that the other prongs of Rule 24(a)(2) have been satisfied.

470

Gladstein, Reif & Meginniss, LLP, New York, By Walter M. Meginniss, Jr., Esq., James Reif, Esq., Beth Margolis, Esq., of Counsel, for the Plaintiffs.

Epstein, Becker & Green, P.C., New York, By Matthew T. Miklave, Esq., for the Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case arises out of the plaintiffs' allegations that the Unisys Corporation ("Unisys" or the "defendant") violated the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the New York State Human Rights Law, N.Y. Exec. Law § 290, *et seq.* (the "NYHRL"), in connection with a November 1993 reduction-in-force ("RIF"). This is the Court's third written decision in the case. In its August 25, 1999, decision, the Court held that an employer being sued for age discrimination, based partly upon the terms of a Collective Bargaining Agreement and a Performance Planning and Evaluation Program ("PP & E"), may seek contribution under the NYHRL and CPLR 1401 from the union that was a party to those labor agreements. *Rodolico v. Unisys Corp.*, 189 F.R.D. 245 (E.D.N.Y. 1999). As a result of this decision, pursuant to Rule 14 of the Federal Rules of Civil Procedure, the Court granted Unisys' motion for leave to file a third-party complaint against Engineers Union Local 444 ("Local 444" or the "Union") to the extent Unisys sought contribution under the NYHRL. In its May 1, 2000, decision, the Court granted the Union's motion to dismiss the third-party complaint, finding that it was preempted by the federal labor law duty of fair representation ("DFR"). *Rodolico v. Unisys*, 96 F.Supp.2d 184 (E.D.N.Y.2000).

Presently, the plaintiffs seek class certification of their NYHRL claims pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), and the authority to pursue their ADEA claims as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). In particular, the plaintiffs move for an order authorizing maintenance of a representative action of behalf of all engineers in the Local 444 bargaining unit employed by Unisys at its Great Neck, New York facility, who were selected for layoff effective November 23, 1993, who were more than forty years of age at the time of the layoff, and who have filed written consents to become parties to this action.

## I. BACKGROUND

Although the facts underlying this dispute were detailed in the Court's August 25, 1999, decision, *see Rodolico*, 189 F.R.D. at 247–48, the relevant and undisputed facts are worth repeating here, because the Court must engage in a fact-intensive inquiry in order to determine the motion currently pending before it.

On November 23, 1993, Unisys laid off 232 engineers from its Great Neck, New York headquarters. The plaintiffs, all members of Local 444 allege that Unisys' polices and practices in the RIF discriminated against its older employees. The plaintiffs' allegations can be summarized as follows:

> The layoff discriminated against older employees by disproportionately selecting them for discharge, by discriminatorily implementing a provision in a collective bargaining agreement giving Unisys discretion in selecting employees for lay off, and by using evaluation practices which, as described below, disfavored older workers.

(Complaint ¶ 2).

The Collective Bargaining Agreement ("CBA") in effect at the time of the RIF contained a seniority provision that required Unisys to create a common seniority list, known as the "Main List" or the "A List." The Great Neck engineers were included on the "A List," which was subdivided into three seniority tiers. The "junior tier" was comprised of engineers with a seniority date on or after January 1, 1983. The "middle tier" was comprised of engineers with a seniority date on or after January 1, 1977, and before January 1, 1983. Finally, the "senior tier" was comprised of engineers with a seniority date prior to January 1, 1977.

Pursuant to the negotiated layoff provision, "A List" layoffs were to be implemented in order of seniority, with two exceptions. Under the CBA, two classes of engineers were protected from layoff: (1) engineers

identified by the Union to be Union officials and/or stewards; and (2) engineers identified by Unisys to be retained. With respect to the latter group, Local 444 agreed that Unisys could retain: (1) three engineers for every engineer to be laid off from the junior tier on the "A List"; (2) two engineers for every engineer to be laid off from the middle tier of the "A List" and (3) one engineer for every engineer to be laid off from the senior tier of the "A List." The CBA also permitted volunteers to come forward and save the highest seniority "A List" engineers otherwise selected for layoff.

Of the 232 engineers laid off on November 23, 1993, 173 were over the age of 40. The named plaintiffs initially sought to represent themselves and 121 other engineers who consented to be represented by the plaintiffs (*see* Plaintiffs' Memorandum in Support of Motion for Class Certification [hereinafter "Plaintiffs' Memorandum"], p. 10). However, since the plaintiffs filed their motion, the parties have filed, and the Court has approved, a stipulation of dismissal with regard to one opt-in plaintiff. Counsel for the plaintiffs has indicated that two other opt-in plaintiffs have notified counsel of their intention to withdraw, but no stipulation of dismissal has been sent to the Court. As such, the Court finds that the plaintiffs seek to represent themselves, six people, and 120 other engineers who have consented to be represented by the plaintiffs.

## II. *DISCUSSION*

### A. Class Certification Under Rule 23

The plaintiffs seek to certify a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for the purpose of litigating their NYHRL claims. Rule 23(a) sets out the requirements for certification:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative

parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

The party seeking certification, here the plaintiffs, bears the burden of demonstrating each of the four elements, *see Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 58 (2d Cir.2000); *Caridad v. Metro–North Commuter Railroad,* 191 F.3d 283, 291 (2d Cir.1999), *cert. denied,* 529 U.S. 1107, 120 S.Ct. 1959, 146 L.Ed.2d 791 (2000), and the Court must accept their allegations as true, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Although the Court must perform a rigorous analysis before determining that the prerequisites of Rule 23(a) have been satisfied, *see General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Baffa,* 222 F.3d at 58; *Caridad,* 191 F.3d at 291, Rule 23 should be given "broad, rather than restrictive interpretation," by the Court. *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 88 (E.D.N.Y.1989). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adames,* 133 F.R.D. at 88 (citing *Woe v. Cuomo,* 729 F.2d 96, 107 (2d Cir.1984)).

If the Court is satisfied that each of the four elements of Rule 23(a) has been met, the Court must then determine whether the class is maintainable pursuant to one of the subdivisions of Rule 23(b). *See* Fed.R.Civ.P. 23; *In re Visa Check/Mastermoney,* 192 F.R.D. 68, 78 (E.D.N.Y.2000). Here, the plaintiffs argue that the proposed class satisfies the requirements of subdivisions (b)(2) and/or (b)(3) (*see* Plaintiffs' Memorandum of Law, p. 9). Those subsections require the plaintiffs to establish that:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions af-

fecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed.R.Civ.P. 23(b)(2), (3).

The Court is mindful that a motion for class certification is not an occasion for the Court to examine the merits of a case. *See Baffa,* 222 F.3d at 58; *Caridad,* 191 F.3d at 291 (citing *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 570–72 (2d Cir.1982)). Indeed, the Court should not resolve any material factual disputes as it determines whether the plaintiffs have provided a reasonable basis for their assertions. *Sirota,* 673 F.2d at 570– 72. The Supreme Court has warned against allowing a motion for class certification to become a mini-trial on the merits:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. Indeed, such a procedure contravenes the Rule by allowing a representative plaintiff to secure the benefits of the class action without first satisfying the requirements for it. He is thereby allowed to obtain a determination on the merits of the claims advanced on behalf of the class without any assurance that a class action may be maintained.

*Eisen* 417 U.S. at 177–78, 94 S.Ct. 2140. Thus, the issue presented here is only whether the plaintiffs have carried their burden of showing that each of the requirements of Rule 23(a) has been met and that the action is maintainable under one of the subdivisions of Rule 23(b).

### 1. Rule 23(a)(1): Numerosity

██ The defendants do not dispute that the purported class of 126 plaintiffs satisfies the numerosity requirement. Indeed, the Second Circuit has recognized that "numerosity is presumed at a level of 40 members." *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). The defendants do argue, however, that the consents of the 120 unnamed plaintiffs are invalid. In particular, the

plaintiffs note that the consents expressly designate Vladeck, Waldman, Elias & Englehard, P.C. as counsel to the putative class, but that firm has since been disqualified. The defendants further assert that the consents are invalid in that they are based on the Union's promise to pay all costs associated with the lawsuit, but the Union is no longer funding this suit.

Counsel for the plaintiffs explain that in the last three months of 1999, he and his associates wrote each of the opt-in plaintiffs a letter stating that: (1) Vladeck, Waldman, Elias & Engelhart had been disqualified from representing the plaintiffs in this action; (2) Gladstein, Reif & Meginniss, LLP had been substituted as counsel for the plaintiffs; and (3) the Union was no longer paying the plaintiffs' expenses. Since the time of that mailing, only one opt-in plaintiff has withdrawn, leaving the 126 named and unnamed plaintiffs presently before the Court. In addition, the named plaintiffs together with some of the putative class members have agreed to pay Gladstein, Reif & Meginnis to represent them in this action. In light of the steps taken by counsel to ensure that the putative class members are aware of all the relevant facts sufficient to enable them to make an informed decision about remaining in the litigation, *see Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 408 (D.N.J.), *aff'd in part,* 862 F.2d 439 (3d Cir.1988), *aff'd,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989), the Court finds that the 126 putative class members who remain in this case have validly consented to be a part of it. Accordingly, the plaintiffs have satisfied the numerosity requirement of Rule 23(a).

### 2. Rule 23(a)(2): Commonality

██ The requirements of commonality and typicality "tend to merge" because " '[b]oth serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.' " *Caridad,* 191 F.3d at 291 (quoting *General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Commonality is met if a common issue of law or fact is shared by the members of the prospective class. The requirement of "[c]ommonality does not mandate that all class members make identical claims and arguments" *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992), nor does it require that "all questions of law or fact raised be common," *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y.1995). "The critical inquiry is whether the common questions are at the "core" of the cause of the action alleged." *D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (citing *Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 18 (W.D.N.Y.1995)). That some asserted factual differences between class members may exist is not a bar to commonality. *See Krueger v. New York Telephone Co.*, 163 F.R.D. 433, 439 (S.D.N.Y.1995).

■ The plaintiffs argue that the November 23, 1993, RIF at Unisys was the result of a centralized plan that had been organized by the company's top management personnel and was designed to lay off older engineers due to their age. The plaintiffs support this claim with three allegations regarding the plan: (1) Unisys decided to have a single RIF rather than two RIFS in order to lay off more senior tier engineers; (2) the company laid off the fewest number of engineers in the junior and middle tiers thereby enabling it to layoff a greater number of older engineers in the senior tier; and (3) Unisys laid off more engineers than was called for by business conditions so that it could reach the older engineers in the senior tier.

The plaintiffs also set forth statements allegedly made by top executives that indicate management's desire to institute a company-wide plan designed to select a disproportionately greater number of older engineers for discharge. They claim that on August 12, 1993, James Love ("Love"), a Human Relations Vice President, convened a meeting of seven top engineering managers, at which they discussed whether Unisys should have one or two RIFs; the number of engineers that should be laid off; and the date of the RIF. In his notes of the meeting, Love wrote, "the larger the RIF the 'better the

selection' from a total company point of view" (Meginnis Declaration in Support of Plaintiffs' Motion for Class Certification [hereinafter "Meginnis Decl."], Ex. 2, p. 2). The plaintiffs argue that Unisys decided to have one RIF, rather than two so the company could reach people in the senior tier who would not have been laid off had there been two RIFs (Meginnis Decl. Ex. 4, pp. 261–63).

The plaintiffs further claim that in September 1993, Love directed Roger Urbont ("Urbont"), an Industrial Relations Manager, to draft a plan for layoffs. The plan was to comply with the CBA and use the maximum number of "holds" under the CBA while also enabling Unisys to lay off the fewest number of people in the junior and middle tiers and the greatest number of people in the senior tier. Urbont determined that in order to reach the most senior engineers, Unisys would have to layoff 277 engineers.

The plaintiffs allege that after Urbont submitted his plan to Love, the vice presidents and directors of the various business groups at Unisys informed Urbont which engineers in their respective groups should be laid off according to the plan. The plaintiffs maintain that Urbont then compiled the names into a single list of 277 engineers to be laid off. The plaintiffs argue that although Unisys ultimately chose to layoff 232 engineers, the company still was able to reach into the most senior tier with its plan.

In support of their claim that Unisys' layoff plan was intended to have a disparate impact on older engineers and was attempting to reach as many engineers in the senior tier as possible, the plaintiffs offer the testimony of three Unisys management officials as well as portions of Unisys' strategic plan for 1993–1997. In particular, the plaintiffs refer to statements made by: Urbont, who testified that he was asked "how far up the seniority list" the company could go if it laid off a certain number of people (Meginnis Decl., Ex. 3, p. 116); John Fox ("Fox"), a Vice President, who testified about being instructed to make his layoff selections in such a manner that he would reach a certain seniority point in his business group (Meginnis Decl., Ex. 9, pp. 105, 225–26); and Michael Hanzor ("Hanzor"), who stated that

Jack Lee ("Lee"), a director, was happy that Unisys' RIF would enable the company to finally reach the top of the seniority list and would allow him to lay off people whom he had wanted to lay off for years (Meginnis Decl., Ex. 10, pp. 113–18). In further support of their argument that Unisys made a centralized decision to layoff the older engineers, the plaintiffs point to the company's Strategic Plan for 1993–1997, in which one of the goals listed is to "[e]stablish a plan for reducing the average age of the technical population" (Meginnis Decl., Ex. 13).

The plaintiffs also claim that Unisys' supervisors made allegedly discriminatory comments. A senior engineer who was laid off stated that he had heard a department head say, "My God, there are a lot of old people in this department" (Meginnis Decl., Ex. 15, p. 2). A member of Local 444's grievance committee testified that a member of Unisys' management had commented that "younger people are easier to train" (Meginnis Decl., Ex. 16, p. 157). An engineer who was part of the 1993 RIF testified that he had heard a member of Unisys' management state that the younger people were more competent, and that if a technical problem arose, the younger people should handle it (see Meginnis Decl., Ex. 17, pp. 90–92). Another engineer selected for layoff in 1993 testified that he had heard a department head remark that the layoffs were a "good way to get rid of the older guys" (Meginnis Decl., Ex. 18, p. 3).

In opposing the motion for class certification, Unisys contends that the November 1993 RIF was a decentralized event. The company claims that "a host of supervisors and managers, at different levels of supervision, using different processes" were responsible for the decisions to layoff the engineers in their respective departments (see Memorandum of Law in Opposition, citing Miklave Decl., Ex. 31, p. 190). In particular, Unisys asserts that the plaintiffs were employed in 49 different departments, and the layoff decisions were therefore made by a variety of managers and were based on the particular circumstances of the plaintiff. Unisys claims that, therefore, every plaintiff will be required to use different witnesses and documents to prove his case. Unisys refers to

many alleged differences among the plaintiffs in support of this argument. In particular, the company alleges that some plaintiffs claim that they were victims of low ratings by their supervisors; some plaintiffs claim that their high ratings were not adequately considered; and some plaintiffs claim to be victims of discriminatory statements. Unisys further maintains that the plaintiffs' claims require individualized proof because the putative class members differ with respect to their age when hired, age at the time of layoff, seniority at the time of layoff, and performance rating (see Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification [hereinafter "Defendant's Memorandum"], p. 7).

Unisys also argues against certification on the basis that each of the plaintiffs' claims are subject to individualized defenses. Unisys alleges that it will present evidence that each of the 126 layoffs at issue was a separate employment decision based on "reasonable factors other than age" (Defendant's Memorandum, pp. 12–13). According to Unisys, the company will put forth evidence to demonstrate that some engineers were selected for layoff because they were poor performers or had poor attendance; some were selected because their skills were obsolete; and some were selected because they had disciplinary records. Unisys also argues that some plaintiffs were younger than other engineers who were not selected for layoff; some plaintiffs volunteered to be laid off while others were saved from layoff by volunteers; some plaintiffs were transferred to another plant after they had been selected for layoff; and some plaintiffs' duties were assumed by older people.

The Court does not agree that decentralized decision-making defeats certification of a class in this case. All of the potential plaintiffs are engineers who were over 40 years old when they were laid off. Every plaintiff was laid off during a single RIF on November 12, 1993, and all of the plaintiffs were laid off from the same Unisys plant in Great Neck, New York. The plaintiffs have also introduced evidence that, if credited, would show that the RIF was the result of a plan handed down by top executives and manag-

ers at Unisys in an attempt to rid the plant of its older workers.

Where, as here, the plaintiffs have alleged the presence of a discriminatory policy or practice, the commonality requirement has been satisfied. *See Caridad,* 191 F.3d at 291–92 (finding that the district court should have certified class where the plaintiffs alleged that Metro–North's promotion policy discriminated against African–American employees, even though the policy delegated discretionary authority to supervisors); *Marisol A. v. Giuliani,* 126 F.3d 372, 376–77 (2d Cir.1997) (affirming district court's certification of a class where the common question of law was whether each child had a legal right to the services he or she claimed had been denied, even though each named plaintiff challenged a different aspect of the child welfare system, and no plaintiff was affected by every violation claimed in the complaint); *Paxton v. Union National Bank,* 688 F.2d 552, 561 (8th Cir.1982) (finding that the commonality requirement had been satisfied because the issue of whether Union National Bank discriminated against black employees by, among other things, denying them promotions pervaded all of the class members' claims, even though the bank's allegedly discriminatory promotion procedures affected individual employees in different ways); *Daniels v. City of New York,* 198 F.R.D. 409, 417–18 (S.D.N.Y.2001) (finding that the commonality requirement had been satisfied where the plaintiffs' injuries resulted from the same unconstitutional practice or policy); *Morgan v. United Parcel Service,* 169 F.R.D. 349, 356 (E.D.Mo.1996) (finding that the alleged presence of a discriminatory policy or practice satisfies the commonality requirement).

That the actual selections of which engineers to be laid off may have been individual decisions made by various supervisors or department heads based on a variety of factors does not detract from the fact that the plaintiffs allege "that their injuries derive from a unitary course of conduct by a single system." *Marisol A.,* 126 F.3d at 377. The factual differences that Unisys argues exists among the putative class members do not defeat certification of the class. *See Baby*

*Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994); *D'Alauro v. GC Services Limited Partnership,* 168 F.R.D. 451, 456 (E.D.N.Y.1996). "The fact that the claims of the proposed class 'stem from the same alleged unconstitutional conduct of the defendants' proves the existence of common questions of law or fact." *Daniels,* 198 F.R.D. at 417 (quoting *Wilson v. Tinicum Township,* 1993 WL 280205 *5 (E.D.Pa.1993)); *D'Alauro,* 168 F.R.D. at 456 ("Further, where the question of law involves 'standardized conduct of the defendant ... [to the plaintiff], a common nucleus of operative fact is typically presented and the commonality requirement ... is usually met.'")(quoting *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill. 1984)).

Here, the Court finds that the alleged age discrimination in the Unisys November 1993 RIF, and the plan upon which that RIF was based, establishes the existence of common questions of law or fact. Thus, the commonality requirement of Rule 23(a)(2) has been satisfied.

### 3. Rule 23(a)(3): Typicality

■ The typicality element of Rule 23(a)(3) requires that the claims of the representative plaintiffs be typical of those of the class. Rule 23(a)(3) "is satisfied when each member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir.1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.*

> [Typicality] does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs claim as to that of other members of the proposed class.

*Bishop v. New York City Dep't of Hous. Preservation and Dev.,* 141 F.R.D. 229, 238

(S.D.N.Y.1992) (quoting *Burka v. New York City Transit Auth.,* 110 F.R.D. 595, 604–05 (S.D.N.Y.1986)).

Here, the claims of the named plaintiffs and the proposed class members arise from the same allegedly unlawful conduct—namely layoff based on the age of the worker. Both the named plaintiffs and the class members will allege that they were laid off because of their age. Accordingly, the claims of the named plaintiffs are typical of those of the class. Contrary to Unisys' contentions the fact that the plaintiffs may differ in terms of age, seniority, and department does not alter the conclusion, because the claim that Unisys' November 1993 RIF constituted age discrimination is central to each putative class members' claim. *See Bishop,* 141 F.R.D. at 238. As such, the Court finds that the plaintiffs' claims satisfy the typicality requirement of Rule 23(a).

### 4. Rule 23(a)(4): Adequacy of representation

In order to maintain a class action, the plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interest of the class." Fed. R.Civ.P. 23(a)(4). Adequacy of representation is measured by two standards. "First, class counsel must be qualified, experienced and generally able to conduct the litigation." *In re Joint Eastern & Southern Dist. Asbestos Litigation,* 78 F.3d 764, 778 (2d Cir.1996); *In re Frontier Ins. Group, Inc. Securities Litigation,* 172 F.R.D. 31 (E.D.N.Y.1997). Plaintiffs' counsel have presented affidavits setting forth their experience and qualifications. In light of this evidence, as well as the absence of an objection by the defendants, the Court is satisfied that the plaintiffs' attorneys are competent to conduct this litigation. *See County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1406, 1407 (E.D.N.Y.1989), *aff'd,* 907 F.2d 1295 (2d Cir. 1990).

■ The second requirement of the adequate representation test is that the class representatives not have "interests antagonistic to those of the remainder of the class." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir.1968); *see In re Drexel Burnham*

*Lambert Group, Inc.,* 960 F.2d 285, 291 (2d Cir.1992); *Long Island Lighting,* 710 F.Supp. at 1413. In this regard, the Court notes that the speculative suggestion of potential conflicts is insufficient to defeat class certification. *See Savino v. Computer Credit Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y.1997) (citing *Gruby v. Brady,* 838 F.Supp. 820, 827 (S.D.N.Y.1993)).

■ Unisys claims that the named plaintiffs do not adequately represent the interests of the unnamed plaintiffs, because all of the putative class members have conflicting interests. In particular, Unisys argues that the fact that its Great Neck plant was closed in 1995 demonstrates that it was in financial trouble at the time of the 1993 RIF. Unisys asserts that therefore some of the putative plaintiffs must have been dismissed for non-discriminatory reasons. Following this reasoning, the company argues that the plaintiffs, who are claiming age discrimination, cannot represent those people who were dismissed for financial reasons. The Court finds that this line of argument goes to the merits of the case and is a speculative leap of faith that does not defeat class certification. *See Savino,* 173 F.R.D. at 352; *Gruby,* 838 F.Supp. at 827.

Unisys further contends that the named plaintiffs are not adequate class representatives because they have not demonstrated an ability and willingness to fund the litigation. However, accepting the plaintiffs' allegations as true, *see Eisen,* 417 U.S. at 177–78, 94 S.Ct. 2140, the Court finds that the representative plaintiffs together with several putative class members have agreed to fund the litigation. Thus, based on these representations, the Court finds that the named plaintiffs have demonstrated an ability and willingness to fund the litigation.

### 5. Rule 23(b)

As discussed above, once the requirements of Rule 23(a) are satisfied, the plaintiff must then comply with one of the three criteria in Rule 23(b). Here, the plaintiffs argue that class certification is appropriate under Rule 23(b)(2) and/or Rule 23(b)(3) (*see* Plaintiffs' Memorandum of Law in Support of their

Motion for Class Certification [hereinafter "Plaintiffs' Memorandum"], pp. 15–21). Rule 23(b)(2) provides that the plaintiff must establish that, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2).

 Class actions certified under Rule 23(b)(2) are restricted to those cases in which the primary relief sought is injunctive or declaratory in nature. *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998). Indeed, "subsection (b)(2) was never intended to cover cases such as this where the primary claim is for damages, but is only applicable when the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968). In this case, the plaintiffs request a variety of relief. They seek a judgment declaring their selections for layoff to be discriminatory; a permanent injunction prohibiting Unisys from continuing or repeating its unlawful conduct; back pay; reinstatement or other appropriate placement; and restoration of benefits they would have received had Unisys not terminated their employment.

Unisys has sold the plant that would have been controlled by any injunctive relief. Accordingly, it is in no position to provide injunctive relief. Thus, the case is, realistically, one for monetary damages. *See Levels v. Akzo Nobel Salt, Inc.,* 178 F.R.D. 171, 178 (N.D.Oh.1998). Because class actions may be maintained pursuant to Rule 23(b)(2) only in those cases in which the primary relief sought is injunctive or declaratory, *see Barnes,* 161 F.3d at 140; *Eisen,* 391 F.2d at 564; Fed.R.Civ.P. 23, Advisory Committee Notes (stating that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief related exclusively or predominately to money damages"), the plaintiffs must satisfy Rule 23(b)(3) in order to proceed, *see Jefferson v. Ingersoll Int'l Inc.,* 195 F.3d 894, 898 (7th Cir.1999) (holding that "[w]hen substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out."); *Reap v. Continental Casualty Co.,* 199 F.R.D. 536, ——, 2001 WL 288706 *9 (D.N.J.2001) ("Rule 23(b)(3) ... was designed for situations in which 'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and Rule 23(b)(2) situations, but when a class action 'may nevertheless be convenient and desirable'" (quoting Fed. R.Civ.P. 23(b)(3) Advisory Notes to 1996 Amendment)); *Weigmann v. Glorious Food, Inc.,* 169 F.R.D. 280, 288 (S.D.N.Y.1996) (providing that Rule 23(b)(2) was intended to assist litigants seeking wide-spread institutional reform through injunctive and/or declaratory relief) (citing *Marisol A.,* 929 F.Supp. at 692).

Rule 23(b)(3) permits class certification when the court finds that class claims predominate over individual claims, and a class action is a more efficient way of resolving the dispute. The Rule provides:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). The Advisory Committee Notes suggest that the drafters of Rule 23(b)(3) had in mind "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Indeed, in adding the "predominance" and "superiority" requirements to Rule 23, the Advisory Committee sought to provide class certification for those cases "in which a class

action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615, 117 S.Ct. 2231.

The common question requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3) overlap. *See* Newberg, 4 Newberg on Class Actions § 18.26, p. 18–82 to 18–83 (3rd ed.1992). However, the predominance requirement is far more stringent than the common question requirement. Thus, even though a case may present common questions of law and fact, those questions may not predominate, and class certification therefore must be denied. *See* Fed. R.Civ.P. 23(a)(2), (b)(3); *In re Sumitomo Copper Litigation,* 182 F.R.D. 85, 89 (S.D.N.Y.1998) (holding that in order for common issues to predominate, class members must be in a "substantially similar factual situation and the questions of law must be applicable to each class member"); *In re Transit Co. Tire Antitrust Litig.,* 67 F.R.D. 59, 73 (W.D.Mo.1975) ("Even though it may be found that class members may have claims based on a common set of facts which may give rise to liability, it may be that defenses, damages, and the standards by which they are measured may differ substantially.").

■ The Court finds that the plaintiffs have met their burden of establishing the predominance of common questions of law or fact with regard to the issue of liability. As noted, the plaintiffs claim that the November 23, 1993, RIF at Unisys was the result of a centralized plan that had been organized by the company's top management personnel and was designed to lay off older engineers due to their age. Accordingly, the main issue in the liability phase of the trial will be whether Unisys engaged in a pattern or practice of intentional discrimination in the planning and execution of the November 23, 1993, RIF. In order to prove the liability of Unisys in this respect, the plaintiffs will rely on the same witnesses to describe the allegedly discriminatory comments made by management officials as well as statements demonstrating management's intent to layoff a disproportionately large number of people over 40. The plaintiffs will also offer the same statistical evidence to show that Unisys actually did layoff a large number of people over 40, as well as their allegation that they were replaced with younger engineers.

Unisys contends that individual issues will predominate in this litigation, because the engineers are from different departments, decisions as to whether to layoff a particular engineer were discretionary and were made by the different department heads, and Unisys intends to assert a variety of individual defenses to show that each decision was based on "reasonable factors other than age." 29 U.S.C. § 623(f)(1). The Court finds that where, as here, the plaintiffs allege a company-wide decision to layoff a disproportionately large number of employees, the common question of a pattern or practice of discrimination predominates because all of the other issues pertain to the defendant's defense. Thus, the plaintiffs should be permitted to attempt to show that Unisys engaged in a pattern or practice of discrimination. Indeed, to hold otherwise would result in the denial of certification in virtually every age discrimination case.

That this case, in particular, lends itself to certification is supported by the fact that the issue of liability and the size of the potential class are narrowly defined. As noted, the issue before the Court will be whether Unisys designed and executed the November 23, 1993, RIF in a manner that discriminated against engineers in the Local 444 bargaining unit who were over 40 years of age. Assuming the plaintiffs are able to establish liability, the Court will revisit the issue of certification for the damages phase of the trial. In addition, the number of possible plaintiffs is limited to 126 and may, in fact, turn out to be fewer. All of the plaintiffs worked at the same plant, at the same time, and they were all laid off as a result of the same RIF.

■ Rule 23(b)(3) also requires the Court to determine that a "class action is superior to other available methods for the efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). Class actions are the superior method for resolving controversies when the main objects of Rule 23 are served,

namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *See Califano v. Yamasaki*, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

■ It is appropriate for the Court to consider the ability of individual plaintiffs to bring their own lawsuits without the financial support of class action. *See D'Alauro*, 168 F.R.D. at 458 (citing *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir.1974)). By permitting the plaintiffs to proceed as a class on the issue of liability, the Court eliminates the risk that the issue of whether Unisys engaged in a pattern or practice of age discrimination will be decided 126 different times. Indeed, a class action in this case conserves judicial resources while permitting a fair adjudication of the issues. For these reasons, the Court finds that a class action is the superior method of resolving the controversy. Accordingly, the plaintiffs have satisfied both prongs of Rule 23(b).

Because all of the requirements of Fed. R.Civ.P. 23 have been met, the Court grants the plaintiffs' motion for class certification, but limits it to the issue of liability.

## B. Collective Action Pursuant the ADEA

In addition to requesting class certification pursuant to Rule 23, the plaintiffs propose that a collective action be maintained under the ADEA for the 126 engineers who were 40 or older when they were laid off from Unisys as part of a RIF on November 23, 1993. The ADEA prohibits age discrimination in the employment. 29 U.S.C. § 623; *see Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 167, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). The enforcement provision of the ADEA, 29 U.S.C. § 626(b), incorporates the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, which provides that:

> An action to recover the liability prescribed ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party

plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

■ Thus, there are two conditions for maintaining a collective action under the ADEA. First, the named plaintiffs and the proposed members of the class must be "similarly situated." Second, the proposed class members must consent in writing to be bound by the result of the suit or "opt-in." *See* 29 U.S.C. § 216(b); *Hyman v. First Union Corp.*, 982 F.Supp. 1, 2–3 (D.D.C. 1997); *Abrams v. General Electric Company*, 1996 WL 663889 * 1 (N.D.N.Y.1996); *Krueger v. New York Telephone Company*, 163 F.R.D. 433, 444 (S.D.N.Y.1995); *Sperling v. Hoffman–La Roche,.* 118 F.R.D. 392, 399 (D.N.J.), *aff'd*, 862 F.2d 439 (3d Cir.1988), *aff'd*, 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Generally, at the notice stage, courts "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Sperling*, 118 F.R.D. at 407; *see Vaszlavik v. Storage Technology Corp.*, 175 F.R.D. 672, 678 (D.Colo. 1997); *Bayles v. American Medical Response of Colorado*, 950 F.Supp. 1053, 1066 (D.Colo.1996); *Heagney v. European American Bank*, 122 F.R.D. 125, 130–31 (E.D.N.Y. 1988) (finding no justification for restraining plaintiffs counsel from writing letters to potential plaintiffs). Then, after discovery has been completed, and the case is ready for trial, the court will engage in the second stage of determining whether the plaintiffs are similarly situated for the purposes of maintaining the collective action.

In regard to the second requirement, of the 173 engineers who were older than 40 and were laid off from Unisys on November 23, 1993, 120 people, in addition to the six named plaintiffs have mailed in written consent forms. Although the defendants attack the validity of these consents, the Court has found that in light of the evidence submitted by the plaintiffs' attorney, the unnamed plaintiffs are aware of the two changes that have occurred since they mailed in their con-

sents, namely the substitution of counsel and the fact that the Union is no longer funding the litigation. Accordingly, as noted above, the Court finds that the 120 unnamed plaintiffs have knowingly and willingly consented to be a part of the litigation, and thus, the plaintiffs have complied with the second requirement for certification under 29 U.S.C. § 216(b). *See Abrams,* 1996 WL 663889 at *1 n. 4 (finding that the plaintiffs had set in motion a mechanism for complying with the second requirement for certification where the plaintiffs had obtained the names and addresses of the potential plaintiffs, had mailed out "opt-in" statements, and many potential plaintiffs had mailed in their consent) (citing *Mete v. New York State Office of Mental Retardation,* 1993 WL 226434 *2 (N.D.N.Y.1993)).

The present motion, therefore, turns on the issue of whether the prospective plaintiffs are "similarly situated" for the purposes of maintaining a collective action during the trial. This Court has not discovered a well settled-test, standard, or rule for determining whether plaintiffs are similarly situated so that they should be permitted to maintain a collective action. *See generally, Bonilla v. Las Vegas Cigar Company,* 61 F.Supp.2d 1129, 1134 n. 4 (D.Nev.1999) (referring to two Court of Appeals decisions addressing the issue: (1) *Mooney v. Aramco Servc. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995), in which the Court simply held that the district court had not abused its discretion in declining the authorization; and (2) *Lusardi v. Xerox Corp.,* 855 F.2d 1062, 1074, n. 15 (3d Cir. 1988), in which the Court stated that it would be "inclined" to treat section 216(b) collective actions as "spurious" class actions under Rule 23 prior to the 1966 Amendments to the rule); *Brooks v. Bellsouth Telecommunications, Inc.,* 164 F.R.D. 561, 567–68 (N.D.Ala. 1995) ("Neither the FLSA nor the ADEA defines the "similarly situated" standard.").

However, the Court is aware that other courts that have struggled with this issue have applied a more stringent "similarly situated" standard in this stage than in the notice stage. *See, Vaszlavik,* 175 F.R.D. at 678 ("At this second stage, although not specifically deemed, the "similarly situated" standard is higher."); *Bayles,* 950 F.Supp. at 1066. Moreover, although courts differ as to the meaning of the phrase, "similarly situated," they generally agree that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification. *See Mete,* 1993 WL 226434 *2 (N.D.N.Y.1993) ("Plaintiffs asserting ADEA claims are not governed, for purposes of class certification, by the requirements of Rule 23."); *Church v. Consolidated Freightways, Inc.,* 137 F.R.D. 294, 305 (N.D.Cal. 1991) ("The clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under 216(b)."); *Sperling,* 118 F.R.D. at .399 ("[I]t is clear that the maintenance of ADEA representative claims ... is governed by § 216(b) and not Rule 23."); *Lusardi,* 118 F.R.D. at 359 ("The requirements for pursuing a section 216(b) class action are independent of and unrelated to the requirements of a class action filed pursuant to Rule 23."). *But see Shushan v. The University of Colorado,* 132 F.R.D. 263, 267–68 (D.Colo.1990) (holding that plaintiffs must meet all requirements of Rule 23 in order to proceed as a collective action under section 216).

In particular, courts have found that the "similarly situated" requirement of 29 U.S.C. § 216(b) is "considerably less stringent than the requirement of Fed.R.Civ.P. 23(b)(3) that common questions "predominate." " *Heagney,* 122 F.R.D. at 127 n. 2; *see also, Bayles v. American Medical Response of Colorado, Inc.,* 950 F.Supp. 1053, 1059 (D.Colo.1996) (noting that Advisory Committee Notes to the 1966 amendments to Rule 23 indicate, "[t]he present provisions of 29 U.S.C. § 216(b) are not intended to be affected by Rule 23, as amended"); *Church,* 137 F.R.D. at 306 (holding that in the early stage of litigation, the plaintiffs are not required to show that common questions of law or fact predominate over individual questions);*Flavel v. Svedala Indus. Inc.,* 875 F.Supp. 550, 553 (E.D.Wis.1994); *Glass v. IDS Financial Services, Inc.,* 778 F.Supp. 1029, 1042 n. 13 (D.Minn.1991).

Indeed, the protections afforded by the predominance requirement are largely served by the opt-in feature of section 216(b).

*Church*, 137 F.R.D. at 306; *see Bonilla*, 61 F.Supp.2d at 1136 ("The § 216(b) requirement that plaintiffs consent to the suit serves essentially the same due process concerns that certification serves in a Rule 23 action."). In order to be bound by the judgment in a collective action, a party must file a written consent to be part of the lawsuit. However, an individual is automatically bound by the judgment in a Rule 23 class action, unless he or she takes an affirmative step to opt-out of the class action. *See Church*, 137 F.R.D. at 305; *Heagney*, 122 F.R.D. at 130 ("holding that because "opt-in" class suit, unlike true class actions under Fed.R.Civ.P. 23, does not fix the rights of absent parties, notification of a section 216(b) suit's pendency to all members of the defined class is not required by the due process clause"); *Bean*, 600 F.2d at 759. Thus opt-in plaintiffs are "less need of Rule 23's protection than opt-out plaintiffs who are bound unless they take affirmative steps with the court to sever themselves from the class." *Church*, 137 F.R.D. at 305. In addition, by affirmatively opting-in to the collective action, section 216(b) plaintiffs have already decided that the benefits of proceeding as a class member outweigh any benefits of proceeding individually, *see Church*, 137 F.R.D. at 305.

Furthermore, converting the similarly situated standard into Rule 23's requirements would likely impede plaintiffs' opportunity to proceed collectively and, therefore, is contrary to broad remedial purposes of prohibiting arbitrary age discrimination. *See Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979); *Heagney*, 122 F.R.D. at 129; *Bean v. Crocker National Bank*, 600 F.2d 754, 759 (9th Cir.1979) ("The ADEA's broad remedial purposes of prohibiting age discrimination and of promoting the employment of older persons based on their ability rather than age are best served by an interpretation of 29 U.S.C. § 216(b) that permits similarly situated complainants to join in an action as unnamed parties."). Indeed,

> A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common

issue of law and fact arising from the same alleged ... activity.

*Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482.

■ The district courts that have addressed the meaning of "similarly situated," have looked to several factors to assist them in determining whether to authorize a collective action. The district court in *Lusardi*, 118 F.R.D. at 359, found the following factors to be instructive: (1) the plaintiffs' factual and employment settings; (2) the individual defenses that the defendant may assert against each plaintiff; (3) fairness and procedural considerations; and (4) the presence of filings required by the ADEA. The district courts in *Bayles*, 950 F.Supp. at 1066, *Vaszlavik*, 175 F.R.D. at 678, *Brooks*, 164 F.R.D. at 568, turned to the *Lusardi* factors to decide whether the plaintiffs in the respective cases were similarly situated. In *Hyman v. First Union Corp.*, 982 F.Supp. 1 (D.D.C.1997), the court found three sets of factors helpful to its analysis: (1) the alleged activities of the defendant; (2) the similarities among the members of the proposed collective action; and (3) the extent to which members of the proposed action will rely on common evidence to prove the alleged discrimination. *Id.* at 1–5; *see also, Abrams v. General Electric Company*, 1996 WL 663889, *2 (N.D.N.Y.1996).

■ Bearing in mind the broad remedial nature of the ADEA as well as concerns of fairness and judicial economy and the factors set forth in *Lusardi* and *Hyman*, the Court finds that the plaintiffs are similarly situated, so that a collective action should proceed on the issue of liability. *See Vaszlavik*, 175 F.R.D. at 679–80 (permitting collective action for liability phase in case where the plaintiffs allege a pattern or practice of discrimination). With regard to the conduct of the defendants, the Court finds that the plaintiffs have alleged that top management officials at Unisys created a plan for the November 23, 1993, RIF that was designed to layoff the maximum number of engineers older than 40. Where, as here, the plaintiff alleges a systematic reduction in force, the decision is one that was obviously made at a high level of the

organization. *See Hyman,* 982 F.Supp. at 3. The plaintiffs acknowledge that individual managers had discretion in deciding whom to retain, but argue that a few high-level managers were responsible for the ultimate discriminatory plan. In particular, the plaintiffs allege that top Unisys executives determined how many people would be terminated; decided that they would have one RIF instead of two; constructed a plan that was aimed to reach the senior-most engineers at the plant; and assembled the selection process. In addition, Unisys' legal and human resources departments reviewed all of the decisions.

Further, even though different managers had the discretion to determine who was ultimately terminated, the plaintiffs have put forth credible evidence that could support a finding that the "allegedly discriminatory decisions were made because of bias on the part of top management that filtered down to the decision-makers." *Id.* at 4. As noted above, managers and vice presidents allegedly made discriminatory comments and voiced a desire to reduce the number of older workers and to lay off the senior-most engineers at the plant. Thus, the defendant's alleged conduct supports the authorization of a collective action for the liability phase of the trial. *See Abrams,* 1996 WL 663889, at *2 (finding that plaintiffs were similarly situated because they all suffered adverse employment decisions in the May 1995 downsizing as a result of the alleged discriminatory policies).

"Weighing very strongly in favor of a collective action is the fact that the challenged employment practice, termination, is the same for each of the members." *Hyman,* 982 F.Supp. at 4. Furthermore, all of the plaintiffs were laid off on the same date as a result of the same RIF. In addition, the employees all come from the same plant, and all performed the same basic job, engineering. The defendants argue against collectivization on the ground that the plaintiffs come from 49 different departments. The court is not persuaded by this argument. First, in order to be "similarly situated," the plaintiffs do not have to perform the same job in the same location as long as there is a discriminatory policy common to all. *See Heagney,*

122 F.R.D. at 127. Second, the Court has decided to bifurcate the case into a liability phase and a remedial phase. The fact that the plaintiffs may have worked in different engineering departments may be irrelevant to the liability phase of this litigation. *See Vaszlavik,* 175 F.R.D. at 679.

The court also finds that the extent to which members of the proposed action will rely on common evidence to prove the alleged discrimination weighs in favor of a collective action. Notably, discovery is not yet complete, and many of the plaintiffs may be unable to continue discovery and trial preparations due to financial considerations. Thus, judicial economy and a sense of fairness support maintaining a collective action at this stage of the litigation. *See Vaszlavik,* 175 F.R.D. at 679. Furthermore, according to the plaintiffs' theory of the case, during the liability phase, they will only be required to introduce evidence showing a pattern or practice of age discrimination. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 357–62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Vaszlavik,* 175 F.R.D. at 680. They contend that they will not have to introduce evidence that they were subject to individual discrimination. *See Teamsters,* 431 U.S. at 357–62, 97 S.Ct. 1843; *Vaszlavik,* 175 F.R.D. at 680. Accordingly, all of the plaintiffs will be relying on the same witnesses and evidence that will demonstrate the "bias which led to the alleged discrimination [that] came from top management and permeated the company." *Hyman,* 982 F.Supp. at 5. In addition, the plaintiffs probably will want to rely on the same statistical evidence to establish that Unisys terminated a disproportionate number of employees over the age of 40. *See Hyman,* 982 F.Supp. at 5. Finally, all of the plaintiffs likely will want to put forth evidence that younger replacements were hired after the termination of those over 40. *See id.*

The defendant argues that the Court should not authorize a collective action, because Unisys will assert a different defense for each terminated employee. An employer defending an ADEA action may do so successfully by establishing that the differentiation between older and younger employees

was based on "reasonable factors other than age." 29 U.S.C. § 623(f)(1). Here, Unisys claims that it will rely on a variety of individual defenses including good cause, business necessity, poor performance or attendance history, or obsolete skills, to name a few.

The existence of separate defenses does not necessarily mean that the plaintiffs are not similarly situated. Rather, the Court has the discretion to examine a variety of factors to decide whether to authorize a collective action. At this point, the Court finds that the prospect of individual defenses does not render this litigation unmanageable. If, at a later point in the litigation, the Court finds that a collective action cannot accommodate the proposed individual defenses, the Court has the discretion to create subclasses or to dismantle the collective action. Accordingly, the Court finds that, standing alone, the prospect of individual defenses should not defeat authorization of a collective action in this case. *See Hyman,* 982 F.Supp. at 5 (finding that in determining whether a collective action is appropriate, a court cannot look at any one factor in isolation).

Mindful of the broad remedial purposes of the ADEA as well as the fact that the "similarly situated" requirement of section 216(b) does not compel the plaintiffs to meet the predominance prerequisite of Rule 23(b)(3), the Court has viewed the picture painted by the plaintiffs as a whole and finds that a collective action is appropriate for the liability phase of the plaintiffs' claim. The liability phase will determine whether Unisys engaged in a pattern or practice of discrimination against its employees in violation of the ADEA as a result of the November 23, 1993, RIF and the decisions and planning leading up to it. *See Vaszlavik,* 175 F.R.D. at 681 (granting collective action for liability phase). If the plaintiffs prevail on the liability phase, the Court will revisit the issue of whether the action should be dismantled for the remedial phase or whether appropriate subclasses can be crafted. *See id.* (proposing to revisit the issue of a collective action during the remedial phase).

### III. *CONCLUSION*

Having reviewed the parties' submissions it is hereby

**ORDERED,** that the plaintiffs' motion for class certification of their NYHRL claim is **GRANTED,** only with regard to liability and it is further,

**ORDERED,** that the plaintiffs' motion for an order permitting a collective action to proceed in regard to their ADEA claims is **GRANTED,** only with regard to liability, and it is further,

**ORDERED,** that this case shall be maintained as a class action pursuant to Rule 23 of the Fed.R.Civ.P. and as a collective action pursuant to 29 U.S.C. § 216(b) for the purpose of determining liability only, and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge William D. Wall immediately to arrange a status conference at the Judge's earliest convenience in order to conclude discovery and set a trial date.

**SO ORDERED.**